**IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
BEAUFORT DIVISION**

| | |
|---|---|
| Brook Ann Dunmire, ) | Civil Action No. 9:09-2296-MBS |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | **ORDER AND OPINION** |
| Michael J. Astrue, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |
| ) | |

On August 28, 2009, Plaintiff Brook Ann Dunmire filed the within action pursuant to 42 U.S.C. § 405(g) of the Social Security Act, as amended (the "Act") seeking judicial review of a final decision of Defendant Commissioner of Social Security (the "Commissioner") denying Plaintiff's claim for disability insurance benefits ("DIB"). In accordance with 28 U.S.C. § 636(b) and Local Rule 73.02, D.S.C., this matter was referred to United States Magistrate Judge Bristow Marchant for pretrial handling. On March 12, 2010, Plaintiff filed her brief addressing the issues in the case. On April 23, 2010, Defendant filed a Memorandum in Support of the Commissioner's Decision. On December 17, 2010, the Magistrate Judge filed a Report and Recommendation recommending that Defendant's decision to deny benefits be affirmed. On December 28, 2010, Plaintiff filed objections to the Report and Recommendation contending that the Magistrate Judge improperly excused the Administrative Law Judge's "failure to properly deal with the listing" analysis. Pl. Obj. at 1. On January 5, 2011, Defendant responded to Plaintiff's objections.

The Magistrate Judge makes only a recommendation to this court. The recommendation has no presumptive weight. The responsibility for making a final determination remains with this court. *Mathews v. Weber*, 423 U.S. 261, 270 (1976). The court may accept, reject, or modify, in whole or

in part, the recommendation made by the Magistrate Judge or may recommit the matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1). The district court is obligated to conduct a *de novo* review of every portion of the Magistrate Judge's report to which objections have been filed. *Id.*

## I. FACTS

On February 22, 2006, Plaintiff filed an application for DIB, alleging disability beginning on May 15, 2005. R. at 63. Plaintiff alleges she is disabled due to "bipolar disorder, anxiety disorder with panic attacks, depression, obsessive compulsive disorder and loss of concentration." R. at 98, *see also* R. at 123-24, 143. Plaintiff's claims were denied initially and upon reconsideration. R. at 9, 19. On August 16, 2006, Plaintiff timely requested a hearing on her applications. R. at 31. On February 11, 2009, a hearing was held before an administrative law judge ("ALJ") at which Plaintiff testified. R. at 9. On April 15, 2009, the ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Act. R. at 6, 18. On June 25, 2009, the Appeals Council denied Plaintiff's request for review of the ALJ's decision. R. at 2. As a result, the ALJ's decision became the final decision of Defendant. R. at 2.

**A.     Plaintiff's Medical Records**

On December 21, 2004, Plaintiff underwent a Primary Assessment of Service Needs for an Adult with Mental Illness and an Alcohol and Drug Use Assessment at Allegan County Community Mental Health Services. R. at 243-258. Plaintiff reported that prior to moving to Allegan County she had been receiving counseling and psychiatric services at Life Guidance Clinic for approximately two months, and had been diagnosed with Bipolar Disorder. R. at 247. Plaintiff was found to have some impairment in the areas of self direction, activities of daily living, learning and interpersonal

functions, but no impairment in personal hygiene, self-care, or recreation. R. at 256. Plaintiff was diagnosed with:

> Bipolar I Disorder, Most Recent Episode Hypomanic, based upon a history of a Major Depressive Episode including depression, sleep disturbance, weight gain, psychomotor agitation, fatigue, and suicidal ideation and a [Manic] Episode including being more talkative, a subjective experience that thoughts are racing, psychomotor agitation, and excessive involvement in pleasurable activities.

R. at 255. It was noted that Plaintiff's "mood symptoms cause clinically significant distress in social and occupational settings." *Id.* Plaintiff was given a secondary diagnosis of Cocaine Dependence with Physiological Dependence in Early (Self-reported) Partial Remission, and of Amphetamine Abuse and Opioid Abuse. R. at 245, 255. Dr. Leslie Pigeon, MSW recommended that Plaintiff receive individual outpatient therapy and psychiatric services to reduce Plaintiff's symptoms of depression and anxiety. R. at 258.

On February 3, 2005, Plaintiff presented to InterCare Community Health Network reporting that she was bipolar and needed medication. R. at 164. The healthcare provider noted that Plaintiff seemed a little manic, but that he or she was hesitant to treat Plaintiff with medication until he or she saw records from Plaintiff's counselor. *Id.*

On February 28, 2005, Plaintiff received a psychiatric evaluation from Dr. Nan Beth Alt, M.D. ("Alt"). R. at 259. Plaintiff was observed to be "alert and oriented times three." *Id.* Plaintiff's affect was flat and she complained of anxiety. *Id.* Alt observed that Plaintiff had "notable characterological issues." R. at 260. Plaintiff was diagnosed with "Obsessive/Compulsive Disorder (self diagnosis)," cocaine abuse, alcohol dependence, and mood and personality disorders, not otherwise specified. Id. Alt prescribed Plaintiff Trileptal. On April 21, 2005, Plaintiff reported to Alt that she was "doing okay," but complained that Tripleptal was giving her an eye twitch. R. at

265. Alt discontinued Plaintiff's use of Trileptal and started Plaintiff on Topamax and Luvox. R. at 265, 177.

On May 13, 2005, Plaintiff voluntarily admitted herself to Allegan General Hospital because her medications were not working, causing Plaintiff to experience anxiety, depression, obsessive compulsive tendencies, chronic panic attacks, poor decision making and suicidal thoughts. R. at 145, 173. Plaintiff was diagnosed with "Bipolar disorder, mixed without psychosis with severe anxiety and obsessive traits." R. at 146. It was determined that it was possible that Plaintiff was on an "antidepressant without and adequate mood stabilizer." *Id.* Plaintiff was discontinued on Topamax and Luvox, and prescribed Depakote, Abilify, and Ativan. R. at 173. The next day, Plaintiff was calmer, but still felt anxious and irritable. *Id.* The following day, Plaintiff felt better because she was not as depressed and her mind was not racing as much. *Id.* By May 19, 2005, Plaintiff's anxiety and depression were low, and Plaintiff "felt ready to face life outside the house." R. at 146. Plaintiff was discharged with prescriptions for Ativan, Depakote and Abilify. *Id.*

On May 23, 2005, Plaintiff had a medication review with Alt. R. at 266. Plaintiff reported her hospital stay and stated that her mood was good, but that she wanted to feel less tired. Id. Alt reduced Plaintiff's dosage of Ativan to reduce her fatigue. *Id.*

On June 2, 2005 Plaintiff presented to InterCare Community Health Network and assessed as having a history of seizure disorder possibly related to cocaine use, bipolar disorder, and "a lot of anxiety issues." R. at 158. It was noted that Plaintiff appeared anxious. R. at 159. On June 6, 2005, Plaintiff's doses of Depakote, Abilify and Ativan were reduced. R. at 176.

On June 8, 2005, Plaintiff completed a disability report in which she reported that bi-polar disorder, anxiety disorder, and depression limit her ability to work. R. at 312. Plaintiff stated that

her anxiety prevents her from concentrating or remembering things. R. at 313. On July 9, 2005, Plaintiff completed a Function Report. R. at 300-307. Plaintiff indicated that her daily activities include eating breakfast, going for a walk, watching T.V., taking a nap, making dinner, showering, sleeping, and caring for her child. R. at 300, 301. Other activities that Plaintiff reported engaging in were cleaning, driving, grocery shopping, taking her son to the zoo or the park, and attending church. R. at 302, 303, 304, 305. Plaintiff, however, reported that she is not able to pay her bills, handle a savings account or use a checkbook. R. at 303. Plaintiff indicated that she has problems with anxiety and "fitting in" that have caused her to be fired from a job. R. at 306.

On June 27, 2005, Amy Creagh ("Creagh") and Alt completed a psychiatric/psychological medical report on Plaintiff. R. at 237. Creagh noted that Plaintiff's "ability to maintain an organized lifestyle is severely impaired due to periods of high (manic) and low functioning complicating by severe anxiety episodes. R. at 239. Creagh further noted that Plaintiff's moods have caused her to lose numerous jobs. R. at 237. Creagh stated that Plaintiff's current medication was helping, but did not give her the ability to maintain employment or stability for even a week's time. R. at 239. Creagh also stated that Plaintiff has difficultly managing and maintaining relationships. R. at 238. Creagh concluded that Plaintiff was diagnosed with Bipolar I Disorder and cocaine dependence. R. at 242.

On July 18, 2005, Dr. William C. Shirado, Ph. D. ("Shirado") completed a psychiatric review technique with regard to Plaintiff covering the time period from May 15, 2005 to the date of the review. R. at 221. Shirado determined that Plaintiff had medically determinable impairments of bipolar disorder and drug abuse. R. at 224. With regard to Plaintiff's functioning, Shirado found that Plaintiff was mildly limited in her activities of daily living, maintaining social functioning, and

in maintaining concentration, persistence or pace, but had no episodes of decompensation of extended duration. R. at 231. Shirado concluded that although Plaintiff had a severe impairment, it was not expected to last twelve months, and that the evidence did not establish the presence of the "C" criteria of the listings. R. at 221, 232.

On October 1, 2005, Plaintiff was assessed for mental illness service needs by Megan Rutherford ("Rutherford") at Allegan County Community Mental Health Services. R. at 193. Rutherford noted that Plaintiff has a "history of substance abuse/dependence, and [wa]s currently using cocaine 'occasionally.'" R. at 195. Rutherford noted that Plaintiff was alert, cooperative, polite, easily frustrated, guarded, anxious, depressed, irritable, labile, rambling, and tangential. R. at 196, 199. Rutherford described Plaintiff's mood as a "mix of anxiety, sadness and frustration/irritability." R. at 196. Rutherford further noted that Plaintiff's "thoughts appeared to be racing during intake." R. at 196. Rutherford diagnosed Plaintiff with bipolar disorder, cocaine abuse, and a generalized anxiety disorder. R. at 197. Rutherford noted that Plaintiff appeared to be going through a "mixed episode" in which she reported both manic and depressive symptoms. R. at 199. Rutherford recommended that Plaintiff receive outpatient psychotherapy. R. at 200.

On January 26, 2006, Plaintiff presented to Dr. Sarat Kondapaneni, M.D. ("Kondapaneni") a psychiatrist at Allegan County Community Mental Health seeking help with her anxiety. R. at 205. Plaintiff reported that she was not able to work because of her anxiety, and at times had difficulty sleeping. R. at 205, 206. Kondapaneni noted that Plaintiff's mood was depressed and anxious, but that her concentration was fair with Plaintiff being able to perform serial sevens correctly. R. at 206. Kondapaneni diagnosed Plaintiff with Bipolar I Disorder with her most recent episode being depressed, Polysubstance Abuse, and Cocaine and Amphetamine Abuse. R. at 206. Plaintiff was

prescribed Lamictal and Klonopin.  R. at 206.

On March 27, 2006, Plaintiff's file with Allegan county Community Mental Health Services was closed because Plaintiff moved out of the county.  R. at 207-08.  It was noted that Plaintiff was given outpatient counseling and psychiatric services, but that Plaintiff had not made any progress because Plaintiff cancelled most of her sessions.  R. at 207.

On January 22, 2008, Plaintiff presented to Dr. Alexander McDonald, M.D. ("McDonald") at Palmetto Behavioral Outpatient Services for an initial outpatient psychiatric exam after moving to South Carolina.  R. at 190.  McDonald's notes from Plaintiff's initial evaluation indicate that Plaintiff was diagnosed with bipolar disorder at age 20.  *Id.*  Plaintiff reported that she had been doing well for the previous one and one half years while on Geodon and Lamictal, which she indicated was the first medication regimen that consistently worked for her.  *Id.*  McDonald noted that Plaintiff appeared to be "mildly hypo-manic" with pressured speech, but was "redirectable." *Id.*  Plaintiff reported that generally her mood was good over the previous few weeks and that her energy, appetite and concentration have all been adequate.  *Id.*  McDonald noted that Plaintiff was alert and oriented, her mood was good, her affect was full range, her thought process was generally linear and coherent, and her judgment and insight were fair. R. at 190.  Plaintiff's speech was mildly rapid and slightly pressured, but redirectable. R. at 191.  McDonald diagnosed Plaintiff with bipolar disorder and continued Plaintiff on Geodon and Lamictal.  *Id.*  Because Plaintiff was experiencing some increased anxiety, McDonald put her on a trial of Klonopin to be used on an as needed basis. *Id.*

On March 6, 2008, McDonald's progress notes for Plaintiff indicate that Plaintiff was "doing ok," and had a "fairly stable" mood, but was "mildly hypomanic" and anxious. R. at 189.  Plaintiff

was continued on Geoden, Lamictal, and Klonopin. R. at 189. On April 9, 2008, Plaintiff reported to McDonald that she was "doing ok" and felt that her medications were helping. R. at 188. McDonald noted that Plaintiff's moot was good, she had a full range of affect, and was coherent. *Id.*

McDonald's progress notes for Plaintiff from June 11, 2008 indicate that Plaintiff was stable on Geoden and Lamictal until a brief period during her pregnancy when she was off those medications. R. at 187. Plaintiff was briefly unstable following the birth of her second child, but improved greatly once her medication was reintroduced. R. at 187. McDonald noted that Plaintiff had been doing well since her last visit, that her mood was good, and that Plaintiff was tolerating her medication. *Id.* Plaintiff was continued on Geoden, Lamital and Klonopin and told to followup with Dr. Eduardo Cifuentes, M.D. ("Cifuentes") because McDonald was leaving the practice. R at 187.

On October 21, 2008, Plaintiff reported to Cifuentes that she was having more anxiety. R. at 186. Cifuentes increased Plaintiff's dose of Geoden because it was the "only way" to control her anxiety when Klonopin was ineffective and was too sedating. *Id.* Cifuentes noted that Plaintiff was coherent, had a full range of affect, had fair judgment and fair insight. *Id.* On November, 20, 2008, Plaintiff reported to Cifuentes that her anxiety was "more prominent," she was responding better to Klonopin, but wanted a drug that was less sedating. R. at 185. Plaintiff was switched to Xanax. *Id.* Cifuentes' progress notes for Plaintiff from December 11, 2008 indicate that Plaintiff was coherent, with fair judgment, fair insight, and a full affect. R. at 184. Plaintiff reported that Lamictal and Geodon were working, but that she was having a lot of anxiety and felt like the Xanax was wearing off quickly. *Id.* Cifuentes increased Plaintiff's Xanax dosage. Id. On February 2, 2009, Cifuentes's progress notes on Plaintiff indicate that Plaintiff had a blunted affect, no anxiety, euthymic mood,

and good judgment. R. at 183. Plaintiff was able to remember three out of three objects after five minutes, indicating that her attention and concentration were intact. *Id.* Plaintiff was continued on Xanax, Lamictal, and Geoden. R. at 183.

On February 9, 2009, Cifuentes filled out a form stating that Plaintiff suffers from an anxiety related disorder, which manifests itself as "[r]ecurrent severe panic attacks manifested by a sudden unpredictable onset of intense apprehension, fear, terror, and sense of impending doom occurring on the average of at least once a week[.]" R. at 179. Cifuentes stated that Plaintiff's disorder resulted in: 1) "[m]arked restriction of activities of daily living;" 2) "[m]arked difficulties in maintaining social functioning;" 3) "[m]arked difficulties in maintaining concentration, persistent or pace;" and 4) "[r]epeated episodes of decompensation, each of extended duration." R. at 180. Cifuentes concluded: "Patient's distractability and chronic anxiety would jeopardize any chances at maintaining a stable and productive work environment. Her recurrent anxiety attacks would cause frequent lapses in concentration and may disrupt the work place. In addition such attacks could take time to resolve, thus incapacitating her throughout such episodes." *Id.* Cifuentes filled out another form in which he indicated that Plaintiff suffers from manic syndrome characterized by hyperactivity, pressure of speech and easy distractability and resulted in "[m]arked restriction of activities of daily living" and "[d]eficiencies of concentration, persistence or pace." R. at 181. Cifuentes concluded that: "Patient suffers from a chronic affective disorder which makes her vulnerable to any stressors and/or changes in her environment. Patient's condition is further complicated by symptoms of anxiety, which make occupation and social functioning difficult." R. at 182.

**B.     Hearing Testimony**

At her hearing before the ALJ on February 11, 2009, Plaintiff testified that since 2004, her panic attacks and racing thoughts have worsened, and that she has a panic attack at least three or four times a day. R. at 352. Plaintiff testified that she was uncertain of what caused her panic attacks, but indicated that they could be from stress because she had more panic attacks on busy days. R. at 356. Plaintiff stated that when she has an attack, she takes her medication and tries to relax until the medication kicks in. R. at 352.

Plaintiff testified that she did not work for two years from 2005 to 2007, and that she had had trouble holding down a job before then because of panic attacks, racing thoughts, mood swings and depression, which would cause her to either get fired or quit. R. at 351. Plaintiff indicated that she could not focus or pay attention and that she had a hard time interacting with others because of her anxiety. *Id.* Plaintiff stated that:

> the anxiety gets so bad that I just like can't think and my palms get sweaty and my heart beats fast and my thoughts race. And I just like totally freeze up. You know I can't do anything. I have to go take a break or I just can't do anything.

R. at 351. Plaintiff testified that she had been working part-time taking care of a lady that has Alzheimer's disease from 7:00 a.m. to 3:00 p.m. four days a week since December 2007. R. at 347, 348. Plaintiff indicated that she felt that she could not handle a more conventional job because there is "too much stimulus and too much commotion and it would just totally give [her] a panic attack." R. at 355. Plaintiff expressed the opinion that her need for frequent breaks to take medication and handle her panic attacks would cause her to quit or get fired. R. at 355.

Plaintiff testified that she had two children ages fourteen months and seven years. R. at 345. Plaintiff testified that she cares for her fourteen month old herself. R. at 346. Plaintiff indicated that

10

she plays with the fourteen month old and that she takes her seven year old to basketball. R. at 345, 346.

C.     **ALJ's Decision**

In her decision denying benefits, the ALJ determined that Plaintiff had two severe impairments: bipolar disorder and a history of drug abuse. R. at 11. The ALJ, determined, however that Plaintiff's impairments did not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1, specifically finding that Plaintiff did not meet the criteria in listing 12.04. *Id.* at 11-12. In making this determination, the ALJ summarized the criteria in listing 12.04 paragraph B and stated:

> In activities of daily living, the claimant had mild restriction prior to the date last insured. The claimant was able to live independently with her two young children. She also testified that she began work as a part-time companion for an Alzheimer's patient in December 2007. She was able to clean her house, shop, drive, and attend church (Exhibit 3F).
>
> In social functioning, the claimant had moderate difficulties. The claimant was able to interact with her children and care for an Alzheimer's patient. The treatment notes also document that the claimant was polite and cooperative during examinations (Exhibits 3F and 4F).
>
> With regard to concentration, persistence or pace, the claimant had moderate difficulties. The claimant testified that she had problems with concentration. However, in January 2006, the claimant was noted to have intact memory with fair concentration. She was able to perform serial 7's (Exhibit 4F). A treatment note from February 2009 documented that the claimant's memory was intact as she could recall 3/3 objects after 5 minutes (Exhibit 2F).
>
> As for episodes of decompensation, the claimant had experienced no episodes of decompensation, which were of extended duration. The claimant required inpatient psychiatric hospitalization in May 2005, but she was hospitalized for only six days and stabilized during her stay. She had no required inpatient treatment or had any extended episodes of decompensation since that time.
>
> Because the claimant' mental impairments did not cause at least two "marked"

>     limitations or one "marked" limitation and "repeated" episodes of decompensation, each of extended duration, the "paragraph B" criteria were not satisfied.

R. at 12.

The ALJ went on to state: "The undersigned has also considered whether the "paragraph C" criteria were satisfied. In this case, the evidence fails to establish the presence of the "paragraph C" criteria." R. at 12. The ALJ did not summarize the "paragraph C" criteria or specifically detail the reasons for her conclusion. *See id.*

After performing her listing analysis, the ALJ determined that Plaintiff's residual functional capacity limited Plaintiff "to performing unskilled work involving simple, routine, repetitive tasks, no interaction with the public and occasional interaction with co-workers and supervisors[,]" but that Plaintiff "retained the capacity to work in proximity to co-workers and supervisors throughout the work day." R. at 13. After concluding that Plaintiff was unable to perform any past relevant work, the ALJ determined that Plaintiff could perform other jobs that existed in significant numbers in the national economy and that Plaintiff was not under a disability from her alleged onset date through her last date insured. R. at 16, 17, 18.

## II. STANDARD OF REVIEW

The role of the federal judiciary in the administrative scheme established by the Social Security Act is a limited one. Section 205(g) of the Act provides that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). "Substantial evidence has been defined innumerable times as more than a scintilla, but less than a preponderance." *Thomas v. Celebrezze,* 331 F.2d 541, 543 (4th Cir. 1964). This standard precludes a *de novo* review of the factual circumstances that substitutes

the court's findings for those of the Commissioner. *Vitek v. Finch*, 438 F.2d 1157 (4th Cir. 1971). The court must uphold the Commissioner's decision as long as it is supported by substantial evidence. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972). "From this it does not follow, however, that the findings of the administrative agency are to be mechanically accepted. The statutorily granted right of review contemplates more than an uncritical rubber stamping of the administrative action." *Flack v. Cohen*, 413 F.2d 278, 279 (4th Cir. 1969). "[T]he courts must not abdicate their responsibility to give careful scrutiny to the whole record to assure that there is a sound foundation for the [Commissioner's] findings, and that his conclusion is rational." *Vitek*, 438 F.2d at 1157-58.

The Commissioner's findings of fact are not binding if they were based upon the application of an improper legal standard. *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). However, the Commissioner's denial of benefits shall be reversed only if no reasonable mind could accept the record as adequate to support that determination. *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

### III. THE APPLICABLE LAW AND REGULATIONS

The Social Security Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are "under a disability." 42 U.S.C. § 423(a). Disability is defined in 42 U.S.C. § 423(d)(1)(A) as: "[the] inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."

The Social Security Act has, by regulation, reduced the statutory definition of "disability" to a series of five sequential questions that are to be asked during the course of a disability

determination. The five questions are: (1) is the claimant engaged in substantial gainful activity; (2) does the claimant have a severe impairment or combination of impairments; (3) does the claimant have an impairment that meets or equals one of the listings in the appropriate appendix; (4) is the claimant prevented by the impairment or combination of impairments suffered from engaging in his or her relevant past employment; and (5) does the claimant have the ability to engage in other gainful activity considering his or her age, education, past relevant experience, and residual functional capacity. *See* 20 C.F.R. § 404.1520 (2007). An individual may be determined not disabled at any step if found to be: gainfully employed, not severely impaired, not impaired under the Listing of Impairments, or capable of returning to former work. In such a case, no further inquiry is necessary.

## IV.  DISCUSSION

Plaintiff objects to the Magistrate Judge's conclusion that the ALJ conducted a proper listing analysis. Pl. Obj. At 1. Plaintiff contends that the ALJ failed to compare Plaintiff's impairments with the listed criteria and failed to properly explain her determination that Plaintiff did not have an impairment that meets or equals one of the listings in the appropriate appendix. *Id.* The Magistrate Judge concluded that the ALJ properly discussed and made findings with regard to the criteria listed in paragraph C of Listing 12.04 because the ALJ's discussion and conclusions with regard to the paragraph B criteria were also applicable to paragraph C, and the ALJ did not need to discuss her findings twice. R&R at 5. The court disagrees.

In conducting a substantial evidence inquiry, the court must address whether the ALJ has analyzed all of the relevant evidence and sufficiently explained her rationale. *Durham v. Apfel*, 225 F.3d 653 (Table), 2000 WL 1033060, at *3 (4th Cir. July 27, 2000) (citing *Milburn Colliery Co. v. Hicks*, 138 F.3d 524, 528 (4th Cir. 1998)). The Fourth Circuit has stated that "[j]udicial review of

an administrative decision is impossible without an adequate explanation of that decision by the administrator." *Wyatt v. Bowen,* 887 F.2d 1082 (Table), 1989 WL 117940, at *4 (4th Cir. 1989) (quoting *DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983)).

Listing 12.04 provides that the required level of severity for affective disorders "is met when the requirements in both A and B are satisfied, or when the requirements in C are satisfied." 20 CFR 404 SubPart P, Appendix 1, § 12.04. Paragraph A requires: "Medically documented persistence, either continuous or intermittent, of one of the following: . . . Bipolar syndrome with a history of episodic periods manifested by the full symptomatic picture of both manic and depressive syndromes (and currently characterized by either or both syndromes)." *Id.* Because the ALJ determined that Plaintiff had a severe impairment of bipolar disorder, paragraph A's requirements were met.

Paragraph B requires that Plaintiff's bipolar disorder result in at least two of the following: 1) "Marked restriction of activities of daily living;" 2) "Marked difficulties in maintaining social functioning;" 3) "Marked difficulties in maintaining concentration, persistence, or pace;" or 4) "Repeated episodes of decompensation, each of extended duration[.]" 20 CFR 404 SubPart P, Appendix 1, § 12.04(B). The ALJ summarized the requirements of paragraph B and determined that its requirements were not met. The ALJ explained, citing substantial evidence from the record, that Plaintiff had only: 1) mild restriction of activities of daily living; 2) moderate difficulties with social functioning; 3) moderate difficulties with regard to concentration, persistence or pace; and 4) no episodes of decompensation of extended duration.

Paragraph C of Listing 12.04 requires that Plaintiff have a:

> Medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial

support, and one of the following:

1. Repeated episodes of decompensation, each of extended duration;[1] or

2. A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or

3. Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

20 CFR 404 SubPart P, App. 1 § 12.04(C).

The ALJ did not summarize the requirements of paragraph C and made only a conclusory statement that the paragraph C criteria had not been met. In her discussion with regard to the criteria listed in Listing 12.04 paragraph B, the ALJ specifically found that Plaintiff had no episodes of decompensation of extended duration, had only mild restriction in her activities of daily living, and moderate difficulties in social functioning. R. at 12. Although this discussion addressed some of the paragraph C criteria, the ALJ never discussed whether: 1) Plaintiff had a "[m]edically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support." *See id.*; and 2) Plaintiff had a "residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause [Plaintiff] to decompensate."[2] Therefore, the ALJ did not provide a complete statement of reasons for her determination that

---

[1] "The term repeated episodes of decompensation, each of extended duration . . . means three episodes within 1 year, or an average of once every 4 months, each lasting for at least 2 weeks." 20 C.F.R. 404, Subpt. P, App. 1.

[2] "Decompensate" is defined as ""to suffer loss of ability to maintain normal or appropriate compensatory mechanisms." Random House College Dictionary 345 (revised ed. 1980). This criteria does not require decompensation for an extended duration.

Plaintiff did not meet the criteria in paragraph C. As a result, the court cannot properly assess whether the ALJ's determination is based on substantial evidence, and the case will be remanded for further explanation as to why the ALJ found that Plaintiff does not meet the requirements of Listing 12.04 paragraph C. *See DeLoatche*, 715 F.2d at 150; *Cook*, 783 F.2d at 1172.

## **CONCLUSION**

The court declines to adopt the Report and Recommendation of the Magistrate Judge. Defendant's decision is reversed and remanded under 42 U.S.C. § 405(g) for a full explanation as to why Plaintiff does not meet the requirements of Listing 12.04 paragraph C.

**IT IS SO ORDERED.**

s/ Margaret B. Seymour<br>
Margaret B. Seymour<br>
United States District Judge

March 10, 2011
Columbia, South Carolina